## THE APPAM.

(Circuit Court of Appeals, Fourth Circuit. February 14, 1917.)

### No. 1473.

ADMIRALTY ⊂══99—JUDICIAL SALES—VACATION.

In a proceeding on a libel against a steamship and its cargo, it appeared on survey that the cargo was perishable, and it was ordered sold. At the first sale of a lot of cocoa beans, they were sold on a bid of 13¼ cents per pound; but, the bidder failing to carry out his contract, the beans were resold to appellant at the risk of the original bidder. Appellant bid only 6 cents per pound, and on filing of objections by the master of the steamship the sale was ordered set aside, and on a third sale the beans were sold for 9½ cents per pound. *Held* that, as the property was personalty and had a well-known market value, it was proper, on application of the master, who tendered a bid at a considerable advance, depositing a certified check for a portion of the purchase price, to set aside the sale to appellant.

[Ed. Note.—For other cases, see Admiralty, Cent. Dig. §§ 661–669.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Norfolk; Chas. A. Woods, Judge.

Libel by Henry G. Harrison against the cargo of the steamship Appam. From a decree setting aside a sale of cargo to Middleton & Co., it appeals. Affirmed.

See, also, 234 Fed. 389.

D. Lawrence Groner, of Norfolk, Va., for appellant.

Floyd Hughes, of Norfolk, Va. (Hughes & Vandeventer, of Norfolk, Va., on the brief), for appellee.

Before PRITCHARD and KNAPP, Circuit Judges, and ROSE, District Judge.

PRITCHARD, Circuit Judge. This case comes here on appeal from the District Court of the United States for the Eastern District of Virginia.

The steamship Appam, belonging to a British corporation, and bound from West Africa to Liverpool, was captured by the German cruiser Moewe and sent in charge of a prize crew to the port of Newport News, Va. Some time after her arrival in Hampton Roads, separate libels were filed against the steamer and her cargo by the respective British owners, and shortly thereafter the court, before whom the proceedings were pending, having ascertained as the result of a survey of the cargo that the same was perishable and subject to decay and injury, it entered an order March 31, 1916, directing the United States marshal

to offer for sale a portion of the cargo at public auction, after advertised notice, etc.

The greater portion of the cargo offered for sale consisted of cocoa, cocoa beans, and palm oil. The sale was had, mostly in lots and parcels, and realized between $600,000 and $700,000. Among the lots sold was 27,520 pounds of cocoa beans, to Louis Lustig, of New York, at 13¼ cents per pound; the total amount of his purchase being $3,682.84, on account of which he then and there paid to the marshal, as earnest money, $300. Due report of the sale, including the sale to Lustig, was made by the marshal to the court, and, no objection being filed thereto, stood confirmed. Subsequently, and on the 9th day of June, Lustig not having paid the balance of the purchase price, an order was entered, directing that he show cause why the property should not be again exposed for sale at his risk and expense, and for his account, and on June 16th, the return day thereof, no cause being shown, an order was entered by the court directing the marshal to proceed to resell, at the risk and expense and for the account of Lustig, the cocoa beans purchased by him on the 12th day of April.

The marshal proceeded to obey this order, and at the second sale appellant became the purchaser of the beans at its bid price of 6 cents per pound, and it thereupon paid to the marshal the purchase price of the same; but, upon the filing of objections by the master of the Appam, libelant, the sale to appellant was ordered set aside, and a third sale had, likewise at the expense and for the account of the said Lustig, and at this third sale the cocoa beans were sold to Snyder and Wheeler of New York for the sum of 9½ cents per pound.

The difference between the bid price of appellant at the second sale and the price paid by Snyder and Wheeler at the last sale amounted to $963.20, and is now held in the registry of the court as a special fund, subject to this appeal.

It also appears that in the main case involving the cargo of the Appam the German government, as captor of the ship and cargo resisted the jurisdiction of the court and took no part in the proceedings relating to the sale of the cargo; its counsel expressly refraining from consenting to any of the decrees, even those relating to the sale of the perishable portion of the cargo, and, at every step, taking great pains to reserve their position in resisting jurisdiction.

It is urged by appellant that the court below was in error in setting aside the sale by which it became the purchaser, and that, therefore, it is entitled to a decree directing the payment of the sum of $963.20. The sole question involved is as to whether the inadequacy of price was so gross as to warrant the court below in refusing to confirm the sale.

A careful consideration of the facts of this case impels us to the conclusion that the action of the court below in setting aside the sale was eminently proper. The learned judge who heard this case, after citing a number of authorities in support of the rule announced, made the following statement relative to the facts, which we think is conclusive:

"The nature of the property is a very important element in deciding what is such gross inadequacy of price as to indicate an unconscionable profit at

the expense of those whose rights are under the protection of the court. When the property sold is land, or vessels, or other things having no definite or quotable market value, and evidence of inadequacy consists of opinions of witnesses, or even of an offer to pay a greater price, made upon information derived from the sale, or after the sale, great caution should be exercised in denying to the purchaser the benefit of a bargain which he took the risk of making. On the other hand, commodities sold and quoted daily on the market have a value which can be definitely ascertained, and as to them inadequacy of price so gross as to shock the conscience is a much more definite conception. No one would doubt that the purchase of corn, or cotton, or wheat, or United States bonds, at half, or even three-fourths of the market value, would be unfair, and confer on the purchaser an unconscionable advantage.

"Cocoa beans are not so commonly known as wheat, corn, and cotton, but they are a staple article of commerce, with a definite, quoted market value, upon which they are bought and sold. It is reasonable to infer that the price of 13½ cents a pound bid at the first sale with a deposit of $300 to secure the bid, was not materially above the market value, at that time. With no evidence of decline in market value, the bid at the second sale was 6 cents a pound, less than half. This is strong evidence of a price so grossly inadequate as to give not simply a fair margin to the purchaser, but a great advantage at the expense of the owners, with practically no risk to himself. This evidence is fortified by the tender to the court, by the master, of a dealer who makes certain his offer to bid at least 9 cents a pound on a resale, by depositing a certified check for $1,000. It was said at the argument that the beans had been injured in storage, and that the market price did not exceed 10 cents a pound, but no proof was offered on these points.

"The point is not free from difficulty, but the court cannot resist the conclusion that to confirm the sale would be to give the purchaser an unconscionable advantage of the parties for whose benefit the sale was made. The exception to the sale is therefore sustained.".

For the reasons stated, the decree of the lower court is affirmed.